IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED
SEP - 2 2005
Michael N. Milby, Clerk of Court

|  |  |
|---|---|
| IN RE | ) |
| VADIE JEFFERY, | ) CASE NO. 05-80531-G3-13 |
| Debtor | ) |

## MEMORANDUM OPINION

The court has considered the Motion For Valuation (Docket No. 11) filed by Associates Housing Finance, LLC ("Movant"), and the Response (Docket No. 13) thereto, and after review of the file, pleadings, evidence and argument of counsel, the court values the collateral of Movant at $12,000.00. with 6% interest, for purposes of determining the secured amount of Movant's claim. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered simultaneously with this Memorandum Opinion. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

1. Debtor filed a voluntary Chapter 13 petition on February 28, 2005 along with her original Chapter 13 Plan. Docket Nos. 1 and 2.

2. Associates Housing Finance, LLC, Movant, is the holder of a secured claim against the Debtor pursuant to a Retail Installment Sales Contract and a security interest in a 1993 Palm Harbor Homes I LP "Countryplace" manufactured home, 18' x 76', Serial Number PH073090, HUD Label/Seal Number TEX0467904, together with all furnishings, fixtures and appliances ("Home"). Movant filed a Proof of Claim in the amount of $45,028.99 with 9.99% interest. In Debtor's proposed Chapter 13 plan she values the Home at $8,000.00 and proposes to pay 6% interest on the claim. Docket No. 2.

3. Movant requests that the court determine the secured value of the Home and order Debtor to amend her plan to provide for this amount. Movant also requests that the court authorize pre-confirmation disbursements based upon this value.

4. Randall Petty testified as an expert in the manufactured housing industry and opined that the Home has a value of $18,644.36. Mr. Petty testified that he has valued thousands of manufactured homes since 1993. Movant Exhibit No. 3. The bases for Petty's opinion were the NADA Manufactured Housing Appraisal Guide, May through August 2005; review of photographs taken by his inspectors; and a physical inspection he conducted on August 4, 2005.

5. Petty testified that he considered the Home to be in poor condition; exterior siding needed replacement, some studs were damaged, and there was a "soft spot" on the floor in one of the rooms. He testified that the NADA Appraisal Guide provides for the application of adjustments to value based upon the current condition of a manufactured home. In the instant case, the initial base value, $19,282.00, was reduced by 30% since the Home was considered to be in poor condition, resulting in an adjusted value of $13,902.32. The court notes that the NADA Appraisal Guide defines a home in "poor" condition as one which has obvious signs of structural deterioration, missing or broken component items, and one which is definitely undesirable and marginally useful.

6. Conversely, adjustments increasing the value are made in conjunction with the type of components and accessories that are included in the manufactured home. Petty added approximately $4,700.00 to the value for components, accessories and optional equipment. These included carpeting, siding, steps, skirting around the home's perimeter, shutters, bath fixtures, kitchen appliances, water heater, central air conditioning and heating, cabinets, doors, electrical, fans, flooring, vaulted ceilings, and plumbing. This resulted in a total adjusted value of $18,644.36.

7. Debtor testified that she bought the Home in 1992 and has lived there since that time. She testified that when Petty's inspector viewed the Home, he fell through the "soft spot," creating a hole in the flooring. According to Debtor's undisputed testimony, the roof leaks in three places and when it is raining, water pours through the leaks into the living and dining rooms. The rain also leaks into her and her daughter's bedroom walls, which has resulted in damage to the furniture in those rooms. Since the rain penetrates the walls Debtor's telephone lines also short out. Debtor testified that the wall in the bathroom near the shower has rotted out revealing an opening between the floor and wall where Debtor can see outside.

8. The NADA Appraisal Guide suggests and the United States Supreme Court determined that certain adjustments be made to the value of collateral in relation to the value of items the debtor does not receive when he retains the collateral, such as warranties, repairs and reconditioning. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

9. There is no dispute that the Home is in poor condition. Although no evidence was presented concerning the cost that would be incurred for necessary repairs, the court notes that substantial work would have to be done to rectify the Home's current deficiencies. Repairs would have to be made to

correct the structural damage to the studs, to fix the holes in the flooring and the open space between the wall and floor in the bathroom, replace the waterlogged walls, and to patch the multiple leaks in the roof.

10. The Debtor testified that she would not value the Home above $8,000.00. At the hearing on the instant motion, the court took judicial notice of Debtor's prior bankruptcy proceeding wherein Movant's claim was valued at $13,999.00 with 7% interest pursuant to her Chapter 13 plan dated December 14, 2004. Main Case No. 04-41439-H2-13.

11. The valuation process is not an exact science and valuation determinations are often based on estimates and approximations, and to some extent, speculation. Considering the circumstances of the instant case, including the analysis of Mr. Petty, the extent of the damage to the Home, and the necessity for extensive repairs, the court finds that Debtor's 1993 Palm Harbor Home together with all furnishings, fixtures and appliances is valued at $12,000.00. The prime interest rate by the Wall Street Journal as of August 24, 2005 is 6.5%. The court finds that 6% interest is reasonable in light of current market conditions and the court's concern that Movant receive compensation in exchange for the present right to foreclose and liquidate its position.

<u>Conclusions of Law</u>

1. Section 506(a) provides that an allowed claim is a secured claim only to the extent "of the value of such creditor's interest in the estate's interest in property..." Thus, section 506(a) directs a determination of (i) the estate's interest in the collateral to be valued, and (ii) the creditor's interest in that interest.

2. Once the court has identified the creditor's interest in the estate's interest in the collateral, the court must then determine the relevant valuation standard to be applied in valuing the creditor's interest. Section 506(a) instructs the court to consider the purpose of the valuation and the proposed disposition of the collateral.

3. The purpose of the valuation in this case is to determine how much the Debtor has to pay the secured creditor in order to confirm her plan in accordance with 11 U.S.C. § 1325(a)(5). The proposed disposition is the debtor's continued retention and use of the home in order to be able to fund the plan. See 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) and cases cited therein.

4. For purposes of determining the amount that must be paid to a secured creditor under a plan when Debtor retains the collateral, the question of value under section 506(a) turns

on the value of the debtor's proposed use of the relevant property under the plan, not the value achievable in a foreclosure scenario that is not proposed, even though the reorganization may ultimately fail and the creditor may foreclose on its collateral as a result. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

     5.   The Supreme Court determined that the appropriate method of valuation is the hypothetical purchase method, defined as replacement value measured at what the debtor must pay for like property of the same condition and age. However, the Supreme Court did not specify particulars:

> Our recognition that the replacement-value standard, not the foreclosure-value standard, governs in cram down cases leaves to the bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented. Whether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property.

*Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 (1997).

     6.   The Supreme Court in *Rash* recognized the concern that a creditor receive compensation and protection in exchange for the tangible loss of valuable nonbankruptcy rights, such as the present right to foreclose and liquidate its position. Although the collateral being valued in *Rash* was a vehicle, the Supreme Court's focus was on the appropriate standard to use to measure the value of the creditor's allowed secured claim with

respect to property that the debtor proposed to retain during the term of its plan. *See Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962-63, 117 S.Ct. 1879, 1885, 138 L.Ed.2d 148, 158 (1997); See 4 *Collier on Bankruptcy* ¶ 506.03[7] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005).

7. Similarly, in valuing collateral that the debtor proposes to retain and use in the cram down context, the bankruptcy court may have to adjust its determination to the extent that it reflects "the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 965 n.6, 117 S.Ct. 1879, 1886 n.6, 138 L.Ed.2d 148, 160 n.6 (1997).

8. Determinations of value in the bankruptcy context do not rise to the level of "mathematical certitude." *Consolidated Rock Prods. Co., v. Du Bois*, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Even when opined upon by experts, valuation determinations often "depend on assumptions, predictions, and, to some extent, speculation." *See In re EFH Grove Tower Assocs.*, 105 B.R. 310, 314 (Bankr. E.D.N.C. 1989); *see also In re Simmons*, 113 B.R. 942, 947 (Bankr. W.D.Tex. 1990).

9. A separate Judgment will be entered valuing the 1993 Palm Harbor Homes I LP "Countryplace" manufactured home, 18' x 76', Serial Number PH073090, HUD Label/Seal Number TEX0467904,

together with all furnishings, fixtures and appliances at $12,000.00, with interest at the rate of 6% for purposes of determining the secured amount of Associates Housing Finance, LLC's claim.

Signed at Houston, Texas on this 2 day of ~~August~~, 2005.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE